**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:23-CV-00200-CHL**

**TORINDA C.,[1]**                                                                                                              **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,[2]**                                                                       **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Torinda C. ("Claimant"). Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). (DN 1.) Claimant and the Commissioner each filed a Fact and Law Summary and/or supporting brief. (DNs 15, 15-1, 17.) Claimant did not file a reply, and her time to do so has expired. (DN 10.) The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 13.) Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **REVERSED** and this matter is **REMANDED**, pursuant to sentence four of 42 § U.S.C. 405(g), to the Commissioner to conduct additional proceedings to remedy the herein identified defects in the original proceedings.

**I.   BACKGROUND**

On June 30, 2020, Claimant applied for disability insurance benefits under Title II ("DIB") and supplemental security income under Title XVI ("SSI"). (R. at 21, 73, 82, 84, 86,

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.
[2] As Martin O'Malley is now the Commissioner of Social Security in place of Kilolo Kijakazi, he is automatically substituted as the Defendant in this matter pursuant to Fed. R. Civ. P. 25(d). The Clerk is directed to change the case caption to reflect the substitution.

183-84.) Her applications alleged disability beginning on June 27, 2019, due to her knee problems and a cyst in her left breast. (*Id.* at 73, 86.) Claimant's applications were denied initially and again on reconsideration. (*Id.* at 100-03, 105-11.)

At Claimant's request, Administrative Law Judge ("ALJ") Steven Collins conducted a hearing on Claimant's applications on February 24, 2022. (*Id.* at 37-72, 119-121.) Claimant attended the hearing by telephone with her attorney.[3] (*Id.* at 39.) An impartial vocational expert also participated in the hearing. (*Id.*)

During the hearing, Claimant testified to the following. She is a high school graduate who lives with her husband. (*Id.* at 45-46.) Her past work includes several commercial cleaning jobs. (*Id.* at 47-48.) She stopped working due to her knees; she said she had a lot of pain and wasn't able to walk or stand for long periods of time. (*Id.* at 48-49.) After she stopped working, she had patella replacement surgery and thereafter tried to go back to work. (*Id.* at 49.) But she "wasn't able to do anything," and her other knee started giving her trouble. (*Id.* at 49-50.) She testified that she has to elevate her knees above her heart constantly for a total of five to six hours per day. (*Id.* at 50-51.) She can only stand or walk for about fifteen minutes before she needs to take a rest because her knees get stiff and she experiences burning, shooting pain. (*Id.* at 52-54.) After standing or walking, she needs to sit down for approximately an hour to recover from the pain. (*Id.*) But she can only sit in a chair for about fifteen minutes before she needs to elevate her legs. (*Id.* at 63.) She testified that she has continued to experience pain despite undergoing multiple knee surgeries. (*Id.* at 54-56.) She has also attempted physical therapy and injections, but those measures did not fully relieve her pain. (*Id.* at 56-58.) She has walked with walker since her first knee replacement surgery due to both the pain and issues with her balance.

---

[3] The hearing was held telephonically due to the COVID-19 pandemic with Claimant's consent. (*Id.* at 41.)

(*Id.* at 57-59.) She testified that she has followed her doctor's treatment recommendations but that there is nothing more that doctors can do to help her than they have already done. (*Id.* at 60.) Her typical pain on any given day even with taking her medications is a six or seven out of ten. (*Id.* at 62.)

The ALJ issued an unfavorable decision on March 30, 2022. (*Id.* at 18-36.) Applying the five-step sequential evaluation process promulgated by the Commissioner to determine whether an individual is disabled, the ALJ made the following findings. First, the Claimant had not engaged in substantial gainful activity since June 27, 2019, her alleged onset date. (*Id.* at 23-24.) Second, Claimant had the following severe impairments: bilateral knee osteoarthritis status post arthroscopy and right total knee arthroscopy, plantar fasciitis, and obesity. (*Id.* at 24.) Third, Claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.*) Fourth, Claimant had the residual functional capacity ("RFC") to perform sedentary work with the following exceptions:

> the claimant can occasionally lift up to ten pounds and frequently lift less than ten pounds out of an eight-hour workday. The claimant could stand and walk about two hours and sit about six hours. The claimant could occasionally push and pull and use foot controls bilaterally. The claimant could occasionally climb ramps and stairs. The claimant should never climb ladders, ropes, or scaffolds. The claimant could frequently balance. The claimant could occasionally stoop, kneel, crouch, and crawl. The claimant should avoid concentrated exposure to vibrations and dangerous machinery and heights.

(*Id.* at 24, 24-28.) Additionally at step four, the ALJ found that Claimant was unable to perform any of her past relevant work as a commercial cleaner. (*Id.* at 29.) Fifth, and finally, considering Claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Claimant could perform. (*Id.* at 29-30.) The ALJ

concluded that Claimant was not under a disability from June 27, 2019, through March 30, 2022, the date of his decision. (*Id.* at 30.)

Claimant subsequently requested an appeal to the Appeals Council, which denied her request for review on March 14, 2023. (*Id.* at 1-7, 180-82, 316-20.) At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2023); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision). Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later. 20 C.F.R. § 422.210(c). Accordingly, Claimant timely filed this action on April 20, 2023. (DN 1.).

## II. DISCUSSION

The Social Security Act authorizes payments of DIB and SSI to persons with disabilities. *See* 42 U.S.C. §§ 401-434, 1381-1383f. An individual shall be considered "disabled" if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a) (2023).

### A.  Standard of Review

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the

Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way"). However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

      B.      **Five-Step Sequential Evaluation Process for Evaluating Disability**

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2023). In summary, the evaluation process proceeds as follows:

(1) Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[4] and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

(4) Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

---

[4] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 416.909 (2023).

>  (5)  Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).  The claimant always retains the burden of proving lack of RFC.  *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

**C.     Claimant's Contentions**

Claimant argued that the ALJ failed to properly evaluate her subjective complaints and that his RFC determination was unsupported by substantial evidence as his analysis did not support that Claimant could perform the exertional requirements of sedentary work. (DN 15; 15-1.)  The Commissioner characterized Claimant's arguments as an impermissible attempt to ask this Court to reweigh the evidence. (DN 17.)  As set forth above, the only question before this Court is whether the ALJ's decision is supported by substantial evidence.  Courts have held repeatedly that a reviewing court's role in determining whether an ALJ's decision is based upon substantial evidence is not to "resolve conflicts in evidence or decide questions of credibility." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012)).  Nor is this Court's role to second-guess the ALJ's conclusions.  *Gayheart*, 710 F.3d at 374; *Smith*, 893 F.2d at 108; *Ulman,* 693 F.3d at 714.  However, this court considers the record as a whole and may look to any evidence in the record—regardless of whether it has been cited by the ALJ—in determining whether an ALJ's

6

decision is supported by substantial evidence. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (citing *Walker v. Sec'y of Health & Hum. Servs.,* 884 F.2d 241, 245 (6th Cir. 1989), *questioned on other grounds by Cutlip v. Sec'y of Health & Hum. Servs.,* 25 F.3d 284, 286 (6th Cir. 1994)). Here, the Court concludes that the ALJ's decision is not supported by substantial evidence.

> In support of his RFC determination, the ALJ explained,
>
> > the claimant's reports to her treating and examining physicians, as well as findings upon objective examination are generally inconsistent with the claimant's testimony of such significant complaints of pain and dysfunction. The medical evidence did not establish pain[ ] of the level and severity that would result in debilitating limitations. The claimant testified that she required the use of a cane and walker for mobility. The record did not reveal that the claimant required subsequent inpatient hospitalization, recurrent emergency room treatment, or prolonged physical therapy. Records revealed that her gait was antalgic, and her strength and coordination was within normal limits. The claimant had full range of motion and normal strength in all extremities. The claimant was neurovascularly intact (Exhibit 1F). Additional medical records revealed normal hip and ankle motion and minimal effusion. It was noted that the claimant's knee was stable, and she demonstrated normal motion and she had a normal sensory examination. Further, an examination revealed only mild tenderness to palpation along the medial and lateral joints of the knee. Her knee was stable, and there was mild warmth and minimal effusion. Additionally, the claimant received some benefit from steroid injections and demonstrated an antalgic gait (Exhibit 11F).

(R. at 25-26 (citing *id.* at 321-42, 694-729).) The Court finds this summary inaccurate and misleading.

The ALJ asserted that Claimant had not needed "prolonged physical therapy," but the Court and the ALJ must have different definitions of "prolonged." The administrative record contains approximately 415 pages of physical therapy records that demonstrate that Claimant received physical therapy between one and three times weekly in August, September, October, November, and December 2019; January, February, May, June, July, August, September, October, November, and December 2020; January, February, March, April, May, June, July,

August, November, and December 2021; and January 2022. (*Id.* at 408, 416, 418, 420, 422, 424, 428, 430, 432, 436, 438, 460, 468, 470, 472, 474, 479, 481, 483, 485, 487, 491, 493, 495, 497, 499, 502, 504, 506, 508, 510, 514, 516, 561, 569, 570, 571, 573, 575, 580, 582, 584, 586, 588, 593, 595, 597, 599, 601, 604, 606, 608, 610, 612, 616, 618, 629, 637, 639, 641, 643, 645, 649, 651, 653, 657, 659, 661, 663, 665, 670, 672, 674, 675, 968, 977, 979, 981, 982, 988, 990, 992, 995, 997, 999, 1001, 1003, 1008, 1010, 1012, 1016, 1018, 1020, 1024, 1026, 1028, 1030, 1033, 1036, 1038, 1040, 1042, 1044, 1046, 1048, 1050, 1052, 1054, 1077, 1087, 1089, 1091, 1093, 1095, 1097, 1099, 1101, 1103, 1105, 1107.) The gaps in Claimant's physical therapy treatment typically overlapped with her immediate recovery from one of her several knee surgeries, which she underwent on July 25, 2019; May 19, 2020; October 29, 2020; and September 14, 2021. (*Id.* at 392-94, 768-79, 892-946, 1265-99.) She also had a follow up procedure under anesthesia for manipulation of her left knee on November 29, 2021. (*Id.* at 1389-1409.) Curiously, the ALJ's discussion of Claimant's medical records referenced only one of Claimant's knee surgeries directly: her July 25, 2019, right knee patellofemoral arthroplasty. (*Id.* at 26.) Her May 2020 left knee surgery was only referenced by the ALJ in passing in his summary of her September 14, 2020, visit to the Ohio Valley Pain Institute, stating, "The claimant had a history of bilateral knee surgeries with her right knee in June 2019 and a more recent left knee surgery in May 2020." (*Id.* at 27.) This is nearly a direct quote from the medical record, including the record's error about the date of her right knee surgery. (*Id.* at 522.) Likewise, the ALJ only referenced Claimant's right total knee arthroplasty on October 29, 2020, as part of a summary of a follow up visit to her provider from June 2, *2021*, over six months after the surgery. (*Id.* at 27.) The ALJ did not mention at all the fact that Claimant underwent a left total knee arthroplasty on September 4, 2021, let alone that she required follow up manipulation of her left knee under

8

anesthesia on November 29, 2021. (*Id.* at 768-79, 1389-1409.) Moreover, while the objective findings regarding Claimant's purported "full range of motion" on which the ALJ relied do exist in the record, there are also a large number of findings of instances when Claimant demonstrated abnormal range of motion, often in the physical therapy records that the ALJ appears not to have reviewed. (*Id.* at 361, 377, 380, 433, 471, 484, 492, 572, 585, 594, 654, 675, 685, 703, 716, 719, 722, 780, 783, 787, 795, 970, 996, 1007, 1017, 1109, 1110, 1121, 1159.) Further, the ALJ incorrectly stated that Claimant received some benefit from steroid injections but the Claimant consistently denied receiving benefit from either steroid or gel injections that she received. (*Id.* at 354 ("She was given a corticosteroid injection 2 weeks ago. This provided her no relief."); *id.* at 377 ("She also had an injection she recalls in November into the left knee that she states was not helpful."); *id.* at 522 ("She has had knee injections with minimal improvement."); *id.* at 528 ("She has had knee injections with minimal improvement."); *id.* at 535 ("We tried a cortisone injection into the scarring last visit without much improvement."); *id.* at 544 ("She has tried gel injections . . . without improvement."); *id.* at 700 ("She had a third gel injection on 4/21/2021. She still having a lot of pain in the left knee."); *id.* at 703 ("Establish[ed] patient is here for third and final gel injection. No changes. She is still having some pain."); *id.* at 705 ("Established patient returns regarding her left knee. She is here for her second injection. No significant changes."); *id.* at 707 ("She previously had a cortisone injection without much improvement.")). These inaccuracies and misrepresentations of the record cast doubt on the validity of the ALJ's conclusions.

      The ALJ also relied on Claimant's daily activities in support of his RFC determination, noting that "claimant's activities of daily living were consistent with the ability to perform a limited range of sedentary exertional level work." (*Id.* at 28.) He noted that Claimant testified

9

that she didn't drive at all. (*Id.* at 25.) He then summarized that Claimant's husband indicated that "the claimant had no difficulties attending to her personal needs and prepared meals daily"; "performed household chores without assistance"; "was able to drive, shopped in stores, and managed her finances"; and "watched television, attended church services, and went out to eat with her sisters." (*Id.* at 26 (citing *id.* at 251-59).) But this too appears to be a misleading summary of the third-party statement, omitting numerous qualifiers about the assistance Claimant's husband provides her with many of the tasks listed by the ALJ. (*Id.* at 252 ("I always help her. She [is] in a lot of pain with her knees all of the time. I do all of the cooking and cleaning."); *id.* at 253 (noting that Claimant's husband has to help her out of the bath); *id.* at 254 (noting that it takes Claimant thirty minutes to an hour to prepare "sandwiches and frozen dinners" and that Claimant "can't stand for a long time"); *id.* at 254 ("I help her with cleaning and laundry").) The statement was also dated July 22, 2020, before all of the surgeries Claimant underwent, leading to obvious questions about the continued accuracy of the information in light of Claimant's declining condition. Curiously, the ALJ didn't cite at all to Claimant's own report of her functioning, which is also dated July 22, 2020, and is largely consistent with her husband's report. (*Id.* at 262 (noting that she has trouble getting out of the bathtub); *id.* at 263 (noting that she cooks sandwiches and frozen dinners and her husband does all the big meals); *id.* at 263 (noting that her husband helps her with cleaning and laundry).) The ALJ didn't ask Claimant any questions during the hearing about her daily activities., which seems an odd choice given the significant changes in her medical history between the completion of the function reports in 2020 and the 2022 hearing.

Based on these inaccuracies and misrepresentations, the Court agrees with Claimant that the ALJ's finding that she could perform a limited range of sedentary work is not supported by

substantial evidence. While the threshold for substantial evidence is "not high," it does require the ALJ to make accurate citations to the record and not ignore without comment large bodies of conflicting evidence. *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). In particular, the ALJ's decision as compared to the record gives the Court concern that the ALJ did not consider relevant evidence in the record, including her physical therapy records and records regarding her fourth knee surgery. The Court is mindful that—as noted above—it is not its task to resolve conflicting pieces of evidence or questions about credibility, but here the ALJ ignored those issues and did not provide sufficient accurate analysis supported by citations to the record for the Court to conclude that the ALJ appropriately resolved such conflicts. As such, the case must be remanded for the ALJ to do so.

Likewise, as to the ALJ's rejection of Claimant's testimony regarding her pain, the Court agrees with Claimant that the ALJ erred. When forming an RFC, an ALJ must assess the claimant's subjective allegations regarding his or her symptoms. 20 C.F.R. §§ 404.1529(a), 416.929(a) (2023). The regulations note that a claimant's statement that he or she is experiencing pain or other symptoms will not, taken alone, establish that he or she is disabled; there must be objective medical evidence that show the existence of a medical impairment that could reasonably be expected to give rise to the pain and/or other symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a). If the ALJ finds that there is a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must then assess

11

the intensity and persistence of a claimant's symptoms to determine how those symptoms limit the claimant's capacity for work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). In doing so, the ALJ should consider a number of factors including a claimant's daily activities; the location, duration, frequency, and intensity of a claimant's pain or other symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of claimant's medications; and any other measures a claimant may use to alleviate pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929). The regulations only require an ALJ to *consider* the pertinent factors; they do not require the ALJ to discuss all the factors in his or her opinion. *See Dutkiewicz v. Comm'r of Soc. Sec.,* 663 F. App'x 430, 433 (6th Cir. 2016) ("The ALJ was not required to explicitly discuss [claimant]'s work history when assessing his credibility . . . ."). However, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 81 Fed. Reg. 14166, 14171 (Mar. 16, 2016). The ALJ's decision contains no such detailed analysis. While the ALJ did rely on the Claimant's daily activities, his inability to make an accurate citation to the record regarding the same calls into question his analysis and leads the Court to conclude that he did not comply with the relevant regulations and SSR.

Given these deficiencies, the Court will remand this matter to the agency for further proceedings.

### III.     ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the Commissioner is **REVERSED** and that this matter is **REMANDED**, pursuant to sentence four of 42 § U.S.C. 405(g), to the Commissioner to conduct additional proceedings to remedy the above-identified defects in the original proceedings.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:     Counsel of Record
September 24, 2024